JACQUELINE HEYMAN *vs.* GERALD KNIRK. No. 92-P-956. January 20, 1994. *Medical Malpractice*, Tribunal, Expert opinion. *Negligence*, Medical malpractice, Doctor. *Witness*, Expert. *Evidence*, Expert opinion.

This is an appeal from a judgment dismissing the plaintiff's complaint after an adverse decision by a medical malpractice tribunal (G. L. c. 231, § 60B). The defendant, an orthopedic surgeon, performed operations on the plaintiff's feet to alleviate a hammer toe condition, and in the postoper-

ative phase of her treatment taped her toes in a dorsiflectory (upward) position. She claims that her present problems — pain and inability to have her toes touch the ground (except in high heels) and difficulty in walking — are a result of improper taping. She also alleges lack of informed consent to the operation.

The plaintiff's expert was a podiatrist whose letterhead lists him as a surgeon podiatrist. He examined the patient, found "bilateral stiff and painful toes two through five, which were all in a dorsiflectory position" and which "on ambulation . . . do not touch the ground."

His opinion was that:

> "Dr. Knirk deviated from the standard of medical practice by placing all eight toes (Bilateral toes two through five) in a dorsiflectory position following surgery in his post operative bandaging. This aforementioned bandaging acted as a splint which positioned all of the patient's lesser toes in an upward (dorsiflectory) attitude. It was the setting of the patient's toes in this position which has caused her toes to be both stiff and painful since the surgery performed by Dr. Knirk . . . .
>
> "[T]here is a direct causal relationship between the surgeries performed by Dr. Knirk and the patient's presently painful pedal condition. The patient's prognosis is extremely guarded. She is faced with either living with her painful feet or undergoing future surgery, with no guaranteed results . . . .
>
> "[B]ased upon review of the aforementioned medical material, in addition to a lower extremity examination, evaluation, interview and x-rays of Mrs. Heyman, within a reasonable degree of medical certainty, Dr. Knirk did deviate from accepted medical care in his treatment of Jackie Heyman."

At the hearing before the malpractice tribunal, counsel for Dr. Knirk raised two arguments: 1) that the opinion of a doctor of podiatric medicine would not meet the directed verdict standard of *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978), because he was not a physician — it was not a different "branch of medicine," but rather a different "school of medicine"; and 2) that the expert's curriculum vitae does not state that he does surgery and his last hospital affiliation was in 1977.

On appeal, the defendant reiterates these arguments stating that it is nowhere suggested that a podiatric surgeon would attend to a hammer toe deformity in the same manner as would an orthopedic surgeon and that he could not be familiar with medical standards because eleven years had elapsed between the time of the plaintiff's operation and the last time the expert was affiliated with a hospital.

The defendant's arguments ignore the teaching of *Kapp* v. *Ballantine*, 380 Mass. 186, 192 (1980), and of later cases. "The standard for the ad-

mission of expert testimony before a medical malpractice tribunal is an extremely lenient one." *Halley* v. *Birbiglia*, 390 Mass. 540, 543 n.4 (1983). As stated in *Kapp* v. *Ballantine* at 192, and reiterated in *Blake* v. *Avedikian*, 412 Mass. 481, 483 (1992), "In our view, the tribunal should give consideration to the proffered opinion of an expert if the offer of proof is sufficient to show that a trial judge in his discretion *might properly rule* that the qualifications of the witness are sufficient. Thus, the opinions of an expert are to be received *even if the tribunal (or its presiding judge) might decide that if the exercise of discretion were in its province, it would not accept the expert as qualified.*" (Emphasis original.)

In *Blake*, where no information was supplied as to the expert's education, training, knowledge, or professional experience, the expert's letterhead showing the abbreviation "D.M.D." was held sufficient to show that the witness was a practicing dentist and hence met the "extremely lenient" standard of establishing his qualifications before a medical malpractice tribunal. *Id.* at 483-484. The court noted that the extent of an expert's training and experience only goes to the weight to be given his testimony; an appraisal of the weight and credibility of the evidence by a tribunal is impermissible. *Id.* at 483.

Applying this standard, the professional facts as to the plaintiff's expert were "sufficient to require consideration of [his] opinion[ by the tribunal." *Kapp* v. *Ballantine* at 192. Not only did the letterhead indicate that the expert was a surgeon but his curriculum vitae listed a postdoctoral program in surgery and orthopedics. That he is not a physician is insufficient reason to disqualify him. In *Kapp*, where the complaint against several physicians and a hospital alleged that electric shock treatment was unnecessary or at least excessively applied, one of the experts whose opinion was *required* to be considered was a psychologist. *Id.* at 190, 193. See also *Whipple* v. *Grandchamp*, 261 Mass. 40, 47 (1927), where a nonphysician was permitted to testify as to x-rays, the court saying, "It is plain that knowledge of the human anatomy may be acquired to a high degree from a student of that subject, although such a person is neither licensed nor registered as a doctor of medicine." Under our cases, the tribunal was required to consider the opinion of the plaintiff's expert.

The remaining claims made by the defendant on appeal were not made before the tribunal, see *Halley* v. *Birbiglia*, 390 Mass. at 543 n. 4, and, in any event, are without merit. The expert was not required to state what should have been done, *Mataitis* v. *Goar*, 416 Mass. 325, 327 (1993), and he attributed sufficiently the patient's difficulties to the improper taping. Since "the tribunal's function under § 60B is limited to the ascertainment whether the offer of proof is sufficient as to any one" of the plaintiff's bases of recovery, *Kapp* v. *Ballantine*, 380 Mass. at 192, we do not discuss the defendant's arguments on the question of lack of informed consent.

Accordingly, the plaintiff's offer of proof was sufficient to raise a question appropriate for judicial inquiry. The judgment of dismissal is vacated.

*So ordered.*

*Anthony F. Cottone* for the plaintiff.
*Richard M. Haley* for the defendant.